IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2003

**JARVIS D. COHEN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-23817     Bernie Weinman, Judge**

_____

**No. W2002-00828-CCA-R3-PC - Filed May 15, 2003**

_____

The petitioner appeals the denial of his petition for post-conviction relief. The petitioner contends his trial counsel failed to investigate his case and meet with him regularly. He further contends his trial counsel never held a hearing on his motion to suppress his identification, thus rendering his plea involuntary. We conclude that the evidence does not preponderate against the findings of the post-conviction court. We affirm the post-conviction court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Jerry Stokes, Memphis, Tennessee, for the appellant, Jarvis D. Cohen.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot A. Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner, Jarvis D. Cohen, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. We affirm the post-conviction court's denial of the petition.

The petitioner confessed to killing Mr. Choong Rau while in the process of robbing Bryan's Grocery Store on February 6, 1998. The petitioner armed himself with a .22 caliber pistol and, with two accomplices, robbed Mr. and Mrs. Rau in Bryan's Grocery Store. After shooting and killing Mr. Rau, the petitioner fled the store with money, food stamps, and other items.

The record does not contain the underlying facts concerning the remaining charges. However, the petitioner was also convicted of one count of attempted first degree murder, two counts of especially aggravated robbery, eight counts of aggravated robbery, two counts of attempted aggravated robbery, two counts of aggravated assault, and one count of possession of marijuana with the intent to sell or deliver. The petitioner was sentenced to life for the felony murder conviction, twenty years for the attempted first degree murder, twenty years for each count of especially aggravated robbery, twelve years for each count of aggravated robbery, six years for each count of attempted aggravated robbery, six years for each count of aggravated assault, and one year for possession of marijuana with the intent to sell or deliver, with all sentences to run concurrently for an effective life sentence.

The testimony at the post-conviction hearing consisted of the petitioner, the petitioner's trial counsel, and the petitioner's mother.

The petitioner testified that from July 7, 1998, to August 27, 1999, he saw his trial lawyer a total of three times while in jail. He said that he, his mother, and his grandmother called his lawyer to request that he meet with him, but they never received a response. He said he wrote the Board of Professional Responsibility three times about his lawyer's failure to visit him. He said his lawyer saw him one time after he contacted the Board of Professional Responsibility and he saw his lawyer in court. He said he went as far as the ninth grade in school, and at the time he pled guilty, he was eighteen years old. He said he was sixteen to seventeen years old when he was charged with the robberies, murder case, and drug cases. He said that he was in special education classes in the ninth grade due to learning disabilities and that he has received Social Security benefits for his disabilities. He said he cannot read very well and needs someone to explain his cases and the law to him.

The petitioner said he gave a confession in his cases, but his lawyer did not have a hearing to suppress any of his statements. He said his lawyer knew about the problems with identification, but did not file a motion to suppress the identification. He said he told his lawyer that he wanted a trial. He said his lawyer appeared as though he was going to trial, but gave him a plea. He said he pled guilty because his lawyer told him that "if I don't take these pleas, I might – if I go to trial, I'd end up with the death penalty or never getting out." He said he had a witness list he wanted to give his lawyer, but he did not speak to any witnesses. He said his lawyer filed a motion to hire an investigator, but he never talked to him. He said he told his lawyer that drugs were never found on him, but he pled guilty to the charge anyway. He said he pled guilty to two robberies which occurred on September 15, 1997, within minutes of one another and in different parts of town. He said he told his lawyer that it was a problem to plead to both robberies, but his lawyer told him not to worry about it. He said the murder occurred on February 6, 1998, and on February 5, 1998, he was in a detective's office giving his confession for some of the other robberies, but he did not remember it. He said that if his lawyer ever filed papers to get all of the information about his cases from the State, he never saw it. He said his lawyer showed him his statements and the autopsies on the murder case, but nothing on the robberies. He said he wanted his guilty pleas set aside.

On cross-examination, the petitioner said he read the waiver of a trial by jury before he signed it. When the trial judge asked the petitioner if he could read, he said "yes." The petitioner testified that he lied to the trial judge when he said he read the paperwork presented to him on that day. He said that when asked if he had given names of witnesses he needed to contact in the event his case went to trial, he told the trial court he did not. He said that when the trial judge asked him if he was satisfied with his lawyer, he said "yes." He said that when the judge asked him if there was anything his lawyer did not do for him that he wanted him to do, he said "no." He said he told the trial court there was nothing he wanted to say at the conclusion of the plea hearing.

The petitioner testified he did not remember giving a statement regarding the shooting at Bryan's Grocery in Memphis. He said the statement he gave regarding a shooting at Bryan's Grocery was untrue. He said all of the statements he gave to police were false.

The petitioner testified that he and his lawyer did not have enough time to discuss his case or sit down and go over things outside of the jail. He said he gave his lawyer names of witnesses, but his lawyer did not investigate them. He said that he was not happy with the way his lawyer was handling his case and that he was trying to listen to him. He said he never complained to the trial court about his lawyer. The petitioner testified that his lawyer explained "life in prison" meant that he would "do about twenty years and get out." He said his attorney filed a motion to suppress his statement, but it was never heard.

Michelle Tutton, the petitioner's mother, testified that the petitioner had already given a statement to police before she arrived at the police station. She said she talked to the petitioner's lawyer a few times about her son's case. She said that the petitioner's lawyer did not discuss a trial with her and that she had trouble contacting the petitioner's lawyer. She said the petitioner had mental problems and had been admitted to Lakeside as an inpatient for these problems. She said the petitioner received Social Security benefits because of his disabilities and does not read well. She said the petitioner had been in special education classes, and he stopped going to school in the ninth grade.

The petitioner's trial counsel testified that he was appointed to represent the petitioner in May of 1998. He said that immediately after appointment, he filed nine discovery-related motions. He said the State had filed a motion to consolidate late in the proceedings. He said he then filed a response, a motion to suppress, a motion and order to hire a private investigator, and a letter with the court regarding his concerns about Rule 13 of the Supreme Court, which addresses the certification of attorneys handling death penalty cases. He said he knew the petitioner was a juvenile and could not be considered for the death penalty, but thought the same standard should be applied to life without parole. He said the trial judge sent a copy of his letter to the Supreme Court for an advisory opinion. He said the Supreme Court concluded that Rule 13 did not apply unless it was a capital case in which the death penalty was being sought. He said he sent a copy of his letter to the Board of Professional Responsibility.

The petitioner's trial counsel testified that on several occasions, the petitioner's cases came up at various times, and he was provided with open discovery. He said he met with the petitioner many times in the courtroom, but the petitioner is fairly accurate about the number of times he met with him in the jail. He said that on several occasions, he conveyed information to the petitioner while the petitioner was within a holding cell in the courtroom.

The petitioner's trial counsel testified that the petitioner never told him his statements were untrue. He said the petitioner voiced some concern about one of the statements because it was not made in the presence of his mother. He said he discussed this with the petitioner, as well as the "options that he had." He said he felt as though the petitioner understood the charges against him. He said he filed a motion to suppress, which incorporated all of the petitioner's statements. He said that if the petitioner had given him the names of witnesses, he would have had his associate or investigators follow through with an investigation. He said there was an order entered for an investigator, but it was never exercised because the need never arose. He said the primary defense he was provided was that the shootings, which the petitioner participated in, were the result of either an accidental discharge or an inadvertent discharge. He said he explained to the petitioner that "during the perpetration of a felony, the fact that he didn't mean to shoot someone was not the best defense to put forth." He said the petitioner told him he did not participate in the robbery which occurred on December 3, 1997. He said that as part of his open discovery, statements from the petitioner's co-defendants were made available to him. He said he believed the petitioner's statements were truthful. He said there may have been some overlapping inconsistencies between the statements given by the petitioner and those given by his co-defendants.

The petitioner's trial counsel testified that the trial court announced to the petitioner that there was a trial set in April. He said his motion to suppress was never heard. He said the petitioner told him on several occasions that he wanted to go to trial. He said that there was overwhelming evidence against the petitioner due to the statements of his co-defendants, photographic identifications, and other physical evidence. He said he shared this information with the petitioner, and the petitioner knew the State's case against him. He said he advised the petitioner regarding the possibility of life in prison, but did not tell him that he was facing the death penalty.

On cross-examination, the petitioner's trial counsel testified that, before the petitioner pled guilty, he told the petitioner that life meant fifty-one years, but there was hope that the legislature might change because of overcrowding. He said the petitioner agreed that it was "in his best interest for him to enter a guilty plea to life with the possibility of parole and have the advantage of having all these other cases run concurrent with that sentence." He said the petitioner did not want a trial, and he pled "pursuant to Alford on some of his robbery cases." He said he thought there was a conflict in the record regarding when the crimes took place, but not in the police reports, indictments, or in any other evidence. He said that he did not raise the discrepancies because they were not an issue. He said the petitioner gave nine statements. He said that "due to the frequency of his court dates and the special settings by Judge Axley," as well as his "ability to talk with him in private in the holding cell in the courtroom," he felt "that was sufficient to convey the information" he needed to convey to the petitioner and receive information from him. He said he has received three letters

from the Board of Professional Responsibility telling him to discuss his complaint with his client, but the letters did not require him to formally respond to the petitioner's complaint. He said he did not think the petitioner had trouble assisting in his own cases because he could read and write well enough to contact the Board of Professional Responsibility.

At the conclusion of the hearing, the post-conviction court ruled that the petitioner had failed to meet his burden of demonstrating ineffective assistance of counsel. In its April 3, 2002, written order denying relief, the trial court stated that it found:

> . . . that the petitioner freely and voluntarily entered the guilty plea after being fully advised of all his rights by his counsel and the trial judge. The petitioner wanted to avoid the possibility of receiving more punishment if convicted at trial. The Court finds that the advice given and the services rendered by the defendant's attorney were within the range of competency demanded by an attorney in a criminal case and that Mr. Morton's representation of the defendant at the guilty plea complied with the requirements set out by the Supreme Court of Tennessee in the case of <u>Baxter v. Rose,</u> 523 S.W.2d 930.

## **Analysis**

The petitioner contends he received ineffective assistance of counsel because his counsel failed to investigate his case and failed to meet with him regularly. He contends he should be afforded relief because the trial court never held a motion to suppress hearing, thus rendering his plea involuntary.

The claim of ineffective assistance of counsel is a mixed question of law and fact and is subject to de novo review; however, we review the findings of the trial court with a presumption of correctness unless the evidence preponderates otherwise. <u>Fields v. State</u>, 40 S.W.3d 450, 456-57 (Tenn. 2001). The judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997); <u>Alley v. State</u>, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). The credibility of witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court and, on appeal, the burden is on the petitioner to prove that the evidence preponderates against the post-conviction court's findings. <u>Henley</u>, 960 S.W.2d at 579.

## **A. Ineffective Assistance of Counsel Claims**

The petitioner contends that his trial counsel's failure to investigate his case and meet with him regularly was so serious that it fell below an objective standard of reasonableness under the prevailing professional norms. He contends that he did not want to enter into a guilty plea and that

eventually, he entered an involuntary guilty plea. He contends that trial counsel's representation fell below a reasonable range of competence.

To prevail on a claim of ineffective assistance of counsel, the petitioner bears the burden of proving that trial counsel's performance was deficient and that the deficiency prejudiced the petitioner. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). To establish that trial counsel performed deficiently, the petitioner must show that counsel's performance was below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The petitioner must also show that his trial counsel's performance prejudiced the defense, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687,104 S. Ct. 2052, 80 L. Ed. 2d 674,(1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

When evaluating an ineffectiveness of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 690. In reviewing the claims of the petitioner, this Court must be highly deferential and "should indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462.

First, the petitioner claims that his trial counsel failed to conduct an adequate investigation of possible witnesses. However, we conclude that the petitioner's claim is not supported by any evidence since he presented none of the alleged witnesses at his post-conviction hearing nor gave his lawyer names of any possible witnesses. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. At the post-conviction hearing, the petitioner's mother testified that she spoke with the petitioner's trial counsel, but failed to present any testimony as to the petitioner's innocence. The post-conviction court did not accept the sharp contrast between the testimony of the petitioner and his counsel by accrediting the testimony of the petitioner's trial counsel. We conclude that the evidence does not preponderate against the findings of the post-conviction court.

Second, the petitioner claims that his counsel did not visit with him regularly while in jail. The post-conviction court found that the petitioner's counsel met with the petitioner on "numerous occasions and fully discussed the case with him and that the defendant fully understood what he was doing." On this issue, the petitioner's testimony and that of his trial counsel are at great odds. The

post-conviction court chose to accredit the testimony of the petitioner's trial counsel, and we conclude that the evidence does not preponderate otherwise.

Third, the petitioner contends that his lawyer was ineffective because the trial court never conducted a motion to suppress hearing. The petitioner contends that his confessions and identification should have been suppressed. Evidence presented at the post-conviction hearing reveals the petitioner's counsel filed a motion to suppress and had the petitioner decided to proceed to trial, a motion to suppress hearing would have been held. The petitioner's trial counsel testified that even if the petitioner's statements had been suppressed, other evidence effectively inculpated the petitioner. The post-conviction court found that "the motion to suppress the defendant's statements was filed" and "there was no need in having a hearing to suppress the identification of the defendant in the homicide case." Once again, the post-conviction court accredited the testimony of the trial counsel and refused to accept the testimony of the petitioner. We conclude the evidence does not preponderate against the findings of the post-conviction court.

## B. Voluntariness of Petitioner's Plea

The petitioner contends his trial counsel's representation was so deficient and prejudicial that it had an effect on his decision to enter a guilty plea and on the outcome of the proceedings. He contends he was unaware of what he was pleading to, thus, involuntarily entered a plea of guilty. Specifically, the petitioner contends that because he does not read well, was in special education classes, and has a ninth grade education, he did not fully understand his plea. The petitioner contends that he pled guilty simply because his trial counsel stated that it was in his best interest to do so. He argues that he would have insisted on a trial if his trial counsel had spent more time with him and explained his options to him.

In determining whether a petitioner's guilty plea was knowing and voluntary, this Court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). This Court "is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). We may neither reweigh or reevaluate the evidence nor substitute our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997).

The record reveals that trial counsel attempted to explain to the petitioner options related to the crimes with which he was charged. The post-conviction court ruled that "the defendant was entering his guilty plea to avoid the possibility of receiving a greater punishment if found guilty at trial." Testimony at the guilty plea submission hearing reveals the petitioner stated that he was not forced into pleading guilty, no one suggested what to say prior to taking the witness stand at his plea hearing, and he did not give his attorney the names of any witnesses. Accrediting both the petitioner's own testimony during the plea colloquy and the testimony of his counsel, the post-conviction court found as a matter of fact that the petitioner was truthful when he stated his original desire to accept a plea of guilt. When an evidentiary hearing is held before the post-conviction court,

the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them.  <u>Tidwell v. State</u>, 922 S.W.2d 497, 500 (Tenn. 1996).

Furthermore, the testimony reveals that, despite the petitioner's claim that he does not read well and has comprehension problems, he was successful in sending several letters to the Board of Professional Responsibility to complain about his counsel.  As much as the petitioner felt compelled to write letters on his own behalf, he had a responsibility to tell the trial court if he did not want to plead guilty at his guilty plea submission hearing. The petitioner has failed to show that the evidence preponderates against the findings of the trial court.

### **<u>Conclusion</u>**

Accordingly, the post-conviction court's denial of the post-conviction relief petition is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE